# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ✻ | **CRIMINAL NO.  06-30031-01** |
| **VERSUS** | ✻ | **JUDGE ROBERT G. JAMES** |
| **SAMUEL H. THOMAS** | ✻ | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed by petitioner Samuel H. Thomas ("petitioner").  Doc. # 105.  For reasons stated below, it is recommended that the motion be **DENIED**.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner, along with co-defendant Louis R. Bradley (hereinafter "Bradley" or "co-defendant Bradley"), was indicted on August 24, 2006, on six counts alleging violations of the Internal Revenue Code.  Indictment [doc. # 1].  At the time a practicing attorney from Tallulah, Louisiana,[1] petitioner was charged with conspiracy to defraud the United States; two counts of making and subscribing false results with respect to his 1999 corporate and personal tax returns; and one count of tax evasion.  *Id.*  On November 15, 2007, after a seven-day jury trial, petitioner was acquitted of the conspiracy charge, and convicted on two counts of making and subscribing a false return and one count of tax evasion.  Verdict Form [doc. # 69].

---

[1] Petitioner was permanently disbarred by the Supreme Court of Louisiana in 2010.  *In re Samuel H. Thomas*, (La. 6/25/2010), 38 So.3d 248.

Thereafter, on November 29, 2007, petitioner filed a post-trial motion for judgment of acquittal.  Doc. # 70-1.  Petitioner's motion was denied on January 29, 2008.  On June 6, 2008, petitioner was sentenced to the custody of the Bureau of Prisons for a term of thirty-six (36) months on counts two, three and six of the indictment, to run concurrently.  Mins. of Ct. [doc # 90].  Petitioner was furthered ordered to pay restitution to the Internal Revenue Service in the amount of $269,780.62.  *Id.*  Petitioner is scheduled to be released from custody on February 14, 2011.[2]  Doc. # 108.

On June 16, 2008, petitioner timely appealed to the United States Court of Appeals for the Fifth Circuit.  Notice of Appeal [doc. # 92].  In his appeal, petitioner put forth three challenges: (1) the sufficiency of the evidence for all three convictions; (2) the propriety of the deliberate ignorance jury instruction; and (3) the restitution order.  *U.S. v. Thomas*, 338 Fed.Appx. 397, 399 (5th Cir. 2009).  As petitioner conceded the issue of restitution at oral argument, the Fifth Circuit only considered the first two issues.  *Id.*  The Fifth Circuit affirmed the judgment of the District Court.  *Id.* On November 20, 2009, the United States Supreme Court denied petitioner's writ of certiorari.  *Thomas v. United States*, 130 S.Ct. 759 (2009).

In his original Section 2255 motion, filed August 18, 2010, petitioner put forth numerous arguments of fact in support of his motion; however, the spaces designated for "Ground One," "Ground Two," etc. are empty.  Mot. of Pet'r [doc. # 105].  Petitioner thereafter filed a memorandum in support of his 2255 motion, purportedly clarifying his claims for *habeas* relief.  Mem. in Supp. of Mot., Aug. 19, 2010 [doc. # 108].  It remains difficult to tell what, precisely,

---

[2] On September 27, 2010, petitioner advised the court that he had been released to a halfway house in Lake Charles, Louisiana.  *See* doc. # 111.  For purposes of *habeas* relief, petitioner Thomas remains "in custody."  *Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998); *see also Jones v. Cunningham*, 371 U.S. 236, 242 (1963), *Hensley v. Municipal Ct.*, 411 U.S. 345, 351-52 (1973); *cf. Ojo v. INS*, 106 F.3d 680, 681 (5th Cir.1997).

petitioner's legal claims are.  However, between the two documents, it appears petitioner asserts

the following grounds for relief:

(1) The district court erred in allowing co-defendant Bradley to testify to hearsay statements of a deceased declarant, Ms. Matra Hamilton.  Doc. # 108, p. 7, ¶ 1.

(2) The district court erred in failing to declare a mistrial after co-defendant Bradley continued to testify as to Ms. Hamilton's statements.  *Id.* at ¶ 3.

(3) There was prosecutorial misconduct because the United States Attorney's office provided co-defendant Bradley with "hearsay information only known to [the U.S. Attorney's office] and rel[ied] on this hearsay evidence in closing argument and brief to the court of appeals."  *Id.* at ¶ 2.

(4) There was prosecutorial misconduct because petitioner was joined in a conspiracy and tried with co-defendant Bradley "where the government did not present a sentilla [*sic*] of evidence of co-defendant guilt [*sic*] on any charge."  *Id.* at ¶ 4.

(5) There was prosecutorial misconduct because the government did not provide petitioner "information on the deceased government witness" but allegedly did provide the same information to co-defendant Bradley.  *Id.* at p. 8, ¶ 5.

(6) There was prosecutorial misconduct because the government did not reveal to petitioner that co-defendant Bradley "was not a license[d] accountant in 2001 in violation of *Giglio v. United States*" (citations omitted).  *Id.* at ¶ 5.

(7) Petitioner was denied effective assistance of counsel at the trial level, because his attorney, A.M. Stroud, III: should have moved for a mistrial following continued "violation(s) of the hearsay rule;" should have objected to "all hearsay testimony by co-defendant of deceased declarant;" and should have file a motion to sever petitioner's trial from that of co-defendant Bradley.  *Id.* at ¶ 6.

(8) Petitioner was denied effective assistance of counsel on appeal, because his attorney, Mr. Stroud, should have requested a "plain error review" of hearsay testimony in light of *Crawford v. Washington* (citations omitted).  *Id.* at ¶ 7.

## LAW AND ANALYSIS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a defendant "must clear a

significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v.*

*Frady*, 456 U.S. 152, 166 (1982). When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  As a result, review under § 2255 is limited to four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255.

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*).  Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally.  A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995).  Of course, issues raised and disposed of on direct appeal are not subject to further review under section 2255.  *See Segler*, 37 F.3d at 1134.

In *United States v. Vaughn*, the United States Court of Appeals for the Fifth Circuit stated:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *U.S. v. Capua*, 656 F.2d. 1033, 1037 (5th Cir. 1981).  Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.

4

*United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992).

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice.  *Murray v. Carrier*, 477 U.S. 478, 495-6, 106 S.Ct. 2639, 2649 (1986); *Bousley v. United States*, 523 U.S. 614, 620-2, 118 S.Ct. 1604, 1610-1611 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991).  Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent.  *Shaid*, 937 F.2d at 232.

## I.    Petitioner's claims, generally

Petitioner bases his claims for *habeas* relief on the theory that he has been the victim of a wrongful persecution by James "Buddy" Caldwell, former District Attorney for the Sixth Judicial District of Louisiana (now Attorney General for the State of Louisiana).  Petitioner alleges that the initial investigation into his business practices, the indictment against him, and subsequent trial and conviction are all part of a vast conspiracy by the District Attorney's office, specifically, Mr. Caldwell.[3]  Petitioner's proof of this wide-ranging conspiracy is a letter dated August 13, 2007 from the U.S. Attorney's office, signed by Attorney C. Mignonne Griffing.  Doc. # 108, Ex. 2.  The letter is addressed to co-defendant Bradley's counsel, Mr. William G. Whatley.  The letter explains the inception of the investigation against petitioner.[4]  Using the letter as his

---

[3] Of course, it was not the D.A. who prosecuted petitioner, but the United States Attorney's office.

[4] The letter is responsive to Mr. Whatley's request as to "who instituted the IRS investigation and if Matra Hamilton had provided information in exchange for a declination of pending DWI charges."  Doc. # 108, Ex. 2. Matra Hamilton was the former legal secretary and assistant for petitioner.  Aff. Of Matra W. Hamilton, Apr. 26, 2000 [doc. # 108-2, Ex. 2].  Ms. Griffing wrote that Ms. Hamilton was arrested for DWI; after her arrest, she

"smoking gun," petitioner alleges that Mr. Caldwell, petitioner's "political foe," orchestrated the initial investigation into petitioner's business practices. Doc. # 108, p. 10. As such, petitioner argues that his trial "was grounded in violation of law from its inception." *Id.* at p. 11. Petitioner alleges that Mr. Caldwell, "an individual [petitioner] ran against for the office [of District Attorney], refused the DWI charge from the Police Department of Matra Hamilton in exchange for statements about the alleged mismanagement of [petitioner's law practice]." Doc. # 108, p. 11. Petitioner further claims–without offering any evidence–that Mr. Caldwell continually interfered with petitioner's "legal business [for] over thirty years." *Id.* Petitioner uses his case to make a broad generalization that the "judicial system" has been utilized not to "ensure all citizens justice," but to "punish your political enem[ies]," as he alleges Mr. Caldwell–via the U.S. Attorney's office, no less–has done to him. *Id.*

## II.    Petitioner's claims concerning the testimony of co-defendant Bradley

Petitioner alleges that the district court erred in allowing co-defendant Bradley to testify to hearsay statements of a deceased declarant. During trial, co-defendant Bradley quoted several statements of Ms. Matra Hamilton, the former office manager of petitioner, who died in 2004.[5]

---

"approached Buddy Caldwell...and told him that she had information on [petitioner]." Doc. # 108, Ex. 2. According to the letter, Mr. Caldwell then "wrote the IRS and FBI." *Id.* An IRS agent, Mr. Ron Carter, was in Mr. Caldwell's office "on an unrelated matter." *Id.* Thereafter, Mr. Carter, an unnamed "IRS-CI agent," an unnamed "FBI agent" and Mr. Caldwell all met, and agreed that "any investigation was more appropriately handled by the IRS." *Id.* Petitioner had been previously convicted on two counts of failing to file tax returns. *In re: Thomas*, 97-0881 (La. 10/19/97), 700 So.2d 490. Ms. Griffing states that she is unaware of the outcome of Ms. Hamilton's DWI, but that her office "did not request any favorable treatment." *Id.* Ms. Griffing further wrote that she had been "told that this is a common way for cases to be initiated." *Id.*

[5] The relevant questioning of co-defendant Bradley, by his attorney Mr. Whatley, occurred on November 14, 2007:

Q: ...Tell us why you classified–I think you classified this when you saw it in the bank statement as client expense, did you not?

A: I did.

Q: Explain to the jury how this came about.

A: When the posting was being done, I posted–my office posted the January through March. And there was

Doc. # 108, p. 13.  Mr. Stroud eventually objected on hearsay grounds, and the court sustained

his objection.  Tr., Nov. 11, 2007, pp. 842-43 [doc. # 84].  Petitioner argues that any statements

referencing what Ms. Hamilton "said" prior to Mr. Stroud's objection were improperly admitted

---

about a six, nine month–about six, seven–about six-month period there I didn't get any bank statements at all.  After
this particular transaction was posted, all that was on the bank statement was a debit memo....for withdraw.  There
wasn't any indication of anything on it.  When I contacted the office, Ms. Hamilton said it was a client expense.
Tr. 822:19–823:10
***
        Q: Okay.  Explain to the jury, if you would, how the bank statements and when the bank statements would
come to you.
        A: Back in 1999, if I remember correctly, I've got probably about the first three statements shortly after the
end of the fiscal year.  What we normally do is post that, get those.  I didn't receive a bank statement for the April or
May or June.  I inquired about it sometime after that.
        Q: Inquired of who?
        A: Ms. Hamilton.
        Q: All right.
        A: And she told me that Sam Thomas had the bank statement.
Tr. 824:5-15
***
        A: Well, on two of those CDs, there wasn't any indication, if I remember correctly, as to what they were for.
        Q: Did you make inquiry?
        A: I beg your pardon?
        Q: Did you make inquiry about that, about the expenditures?
        A: I talked to Matra Hamilton.  She told me he had bought the three CDs for the corporation.
Tr. 828:21–829:2
***
        Q: Why did you classify it as a client expense?
        A: Early on when I started posting for Mr. Thomas, I contacted Ms. Matra Hamilton on some similar-type
entries.  And in that conversation, I was instructed that–or told that whenever I see a name on a check that's
different–that's a new vendor, unless she tell me different, it's a client expense.  When I contacted her on this
particular instance, she said it was a client expense.
Tr. 831:23–832:5
***
        A: Well, if I recall, sometime in February all the posting was done.  And I had, like, a preliminary draft of
the corporate tax return and the–that I sent to Mr. Thomas off of that–I understand Matra Hamilton received.  I
talked to her on the phone about having Mr. Thomas review that draft.  Well, a short time went by and I called her
back.  She said that a lot of the figures on that particular draft were not correct.
        Q: Okay.  Did you do anything as a result of your telephone call that you just described with Matra
Hamilton?  Did you do anything with respect to these adjusting journal entries numbers one through six?
        A: I asked her what she felt like the problem was.  One of the problems, she felt like, were the CDs.  She
said that Mr. Thomas no longer had the CDs.
        Mr. Stroud: Your Honor, I'm going to object to this testimony as hearsay.
        Mr. Whatley: I agree.
        The Court: Disregard that answer, ladies and gentlemen.
Tr. 842:13–843:7

7

at trial, denying petitioner the right of confrontation afforded by the Sixth Amendment to the United States Constitution.

In his motion, petitioner provides the court with thirteen pages of case law concerning the hearsay rule and the purpose of the confrontation clause, neither of which are helpful to his claim that the district court should not have admitted the testimony of co-defendant Bradley.  Petitioner attacks the court, the United States Attorney, and his own counsel.  However, the record illustrates that the hearsay objections were properly sustained when petitioner's counsel made the appropriate objection.  *Id.*  It is not the job of the court to object to the testimony of a witness. Petitioner has not established cause or actual prejudice for his failure to raise this claim on appeal.  It is therefore recommended that petitioner's claim be **DENIED**.

III.    **Petitioner's claims concerning the District Court's failure to declare a mistrial**

Petitioner's argument in support of his claim that a mistrial should have been declared by the court is unclear.  He starts by arguing that his counsel, Mr. Stroud, erred by not objecting to the hearsay testimony of co-defendant Bradley.  Mr. Stroud also erred, petitioner continues, by not seeking a mistrial.  Petitioner then cites to various rules and case law concerning "prosecutorial misconduct," leading the reader to believe that his allegations are not against Mr. Stroud, but against the U.S. Attorney.  Petitioner then finishes by repeating his claim that the August 13, 2007, letter [doc. # 108, Ex. 2] should have been given to petitioner's attorney; that it was denied to petitioner's attorney; that petitioner's attorney should have "asked" (whether petitioner's attorney should have asked for the letter or a mistrial is unclear) and that the court should have "granted" (again, what the court should have granted is unclear).  Doc. # 108, p. 30.

To the extent that petitioner is arguing an ineffective assistance of counsel claim insofar

8

as Mr. Stroud failed to move for a mistrial, as discussed *infra*, it is recommended that this claim be **DENIED**.  To the extent that petitioner is alleging prosecutorial misconduct insofar as the U.S. Attorney's office did not provide the August 13, 2007 letter, it is recommended that this claim be **DENIED** for the reasons described *infra*.  Finally, to the extent that petitioner is arguing that the court erred in not declaring a mistrial–despite the lack of motion for mistrial by Mr. Stroud–it is recommended that this claim be **DENIED**.

IV.   **Petitioner's claims of prosecutorial misconduct**

   a)   **Petitioner's claim that the U.S. Attorney provided co-defendant Bradley with hearsay information; that the same information was denied to petitioner; and that the U.S. Attorney relied on the hearsay in closing argument and in her brief to the appellate court**

Petitioner again asserts his claims regarding the August 13, 2007 letter sent to Mr. Whatley.  Petitioner claims that the letter constitutes prosecutorial misconduct and, again, argues that the government allowed co-defendant Bradley to testify regarding the statements of Ms. Hamilton.  Petitioner states that the letter would have helped his defense, but does not specify how it would have been helpful.  The issue of the hearsay statements and Ms. Hamilton's DWI offense were fully aired prior to trial and excluded by the district judge, all to petitioner's advantage.  *See* Order, Nov. 6, 2007 [doc. # 55].

To the extent petitioner is attempting to argue that the government withheld exculpatory evidence in violation of *Brady*, this argument fails, as the evidence was neither suppressed nor exculpatory.  *Brady v. Maryland*, 373 U.S. 83 (1963).  Petitioner has failed to demonstrate: (1) any cause for his failure to raise this issue on appeal; (2) that the grant of the motion in limine harmed him or prejudiced his defense; and (3) that petitioner did not know of the letter at the time he went to trial.  Petitioner does not explain how anything in the letter would have helped

9

his defense had he known it prior to November 1, 2007 (the date the motion in limine was filed, *see* doc. # 46).  It is therefore recommended that petitioner's *habeas* claim for relief on the grounds that there was prosecutorial misconduct be **DENIED**.

b)      **Petitioner's claim that the U.S. Attorney acted in "bad faith" by jointly trying petitioner and co-defendant Bradley**

Petitioner claims there was "prosecutorial bad faith when the defendant was joined in a conspiracy and tried jointly with co-defendant where the government did not present a sentilla [*sic*] of evidence of co-defendant guilt [*sic*] on any charge."  It is unclear what "co-defendant" petitioner asserts the government had not even a scintilla of evidence against.  As this is petitioner Thomas' motion, one would reasonably assume that he is referring to the evidence the government offered against him.  However, a reading of the text quoted above leads one to believe something else entirely: that it was "wrong" to try petitioner Thomas, with his co-defendant, Bradley, because the government had no evidence against the co-defendant, Bradley on any charge.[6]

There is no evidence that petitioner Thomas and his co-defendant were improperly joined. Thomas and Bradley were both charged with offenses involving participation "in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b).  The fact that the jury acquitted Thomas and Bradley of the conspiracy charges does not indicate that there was "no evidence" against Bradley; rather, it indicates that the government did not meet its burden of proving Bradley's guilt beyond a reasonable doubt.

---

[6] Petitioner's argument in support of this particular claim does not help to clarify his position.  Petitioner begins by citing the rules for proper and improper joinder according to the Federal Rules of Criminal Procedure. Petitioner asserts that his own attorney failed to file a motion for severance prior to the trial.  He then **again** uses the August 13, 2007 letter to in support of his argument.  Doc. # 108, pp.31–34.

This is hardly "bad faith" on behalf of the U.S. Attorney's office.  It is recommended that petitioner's claims for *habeas* relief on the ground that the U.S. Attorney acted in bad faith be **DENIED**.

### c) Petitioner's claim that the U.S. Attorney did not inform petitioner that co-defendant Bradley was not a licensed accountant in 2001

Petitioner argues that the government "place co-defendant [Bradley's] certification as a certified public accountant into evidence."  Doc. # 108, p. 35.  However, petitioner continues, the U.S. Attorney failed to inform petitioner that "one year after filing Thomas taxes [*sic*], Louis Bradley was not certified in the State of Louisiana, or any other State."  *Id.*  As a result, petitioner alleges that he was tried "by ambush, not by the rules of law."

Again, petitioner failed to raise this argument on appeal; again, petitioner offers no cause for this failure or no explanation of how it actually prejudiced him.  Whether co-defendant Bradley was licensed after the events giving rise to the underlying suit against petitioner is irrelevant.

## V.    Ineffective Assistance of Counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 732, 735 (5th Cir. 1992).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right.  *Strickland v. Washington*, 466 U.S. 668, 686-7, 104 S.Ct. 2052, 2063-64 (1984).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both

(1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him.  *Id.*

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland* at 689-690, 2065-66.  The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance."  *Strickland* at 690, 2066; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair."  *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1993); *see also, Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail

time.  *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Here, petitioner raises several claims as to how he was denied effective assistance of counsel.  During his trial, petitioners claims include: Mr. Stroud's failure to raise a continuing objection to co-defendant Bradley's testimony; Mr. Stroud's failure to request a mistrial; Mr. Stroud's failure to file a motion to sever petitioner's trial from that of co-defendant Bradley's.  Doc. # 108, p. 8, ¶ 6.  On appeal, petitioner contends that Mr. Stroud's failure to request a "plain error review" of co-defendant Bradley's testimony, pursuant to *Crawford v. Washington*, constituted ineffective assistance of counsel.  *Id.* at ¶ 7.  Petitioner has neglected to explain how any of these alleged inactions fell below an objective standard of reasonableness, or that petitioner was prejudiced as a result.  The record demonstrates Mr. Stroud was a competent and diligent attorney who zealously advocated for petitioner, both during trial and on appeal.  It is therefore recommended that petitioner's ineffective assistance of counsel claims be **DENIED**.

## CONCLUSION

For the reasons stated above, it is recommended that petitioner's motion (doc. # 105) under 28 U.S.C. § 2255 be **DENIED**.  Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 13th day of October, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

14